**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| ROBERTO PEREZ-PEREZ and ARMANDO NIEVES, individually and on behalf of similarly situated persons, | ) ) ) | Case No. 17-50188 |
| | **)** | |
| Plaintiffs, | ) ) | |
| v. | ) ) | **TRIAL BY JURY DEMANDED** |
| MONSANTO COMPANY, | ) ) | |
| Defendant. | ) | |

<u>**COMPLAINT – CLASS ACTION**</u>

Plaintiffs Roberto Perez-Perez and Armando Nieves ("Plaintiffs"), on behalf of themselves and all others similarly-situated, as and for their Complaint, allege as follows:

<u>**PRELIMINARY STATEMENT**</u>

1.      Plaintiffs are migrant agricultural workers who worked long hours in the corn fields of the Monsanto Company ("Monsanto") in three Midwestern states, but who were not properly compensated for their work.   Plaintiffs bring this action against Monsanto on behalf of themselves and all other similarly-situated migrant agricultural workers who did detasseling work on Monsanto's corn crops and were purportedly paid by the acre (collectively, the "detasseling workers").   Defendant's failure to pay the legal minimum wage and to comply with the disclosure, record-keeping, wage statement, wage payment, and working arrangement requirements of the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA") give rise to both actual and statutory damages owed to the Plaintiffs and the members of the proposed class.

2.     In its "Migrant and Seasonal Agricultural Act Worker Information/Disclosure Statements" (the "Worker Disclosure Statements"), Monsanto represented to the detasseling workers that they would be paid certain flat rates per acre for their work.   In reality, however, Monsanto did not ensure that this promised rate was satisfied, and did not ensure that proper records of workers' hours were kept.

3.     In addition, the detasseling workers failed to receive proper notice of the terms of their employment, the pay they would receive, and the basis for the pay that they did perform.

4.     Plaintiffs now bring this action, on behalf of themselves and others similarly-situated, based on Defendant's violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, the AWPA,  29 U.S.C. §§ 1801 *et seq.,* and the labor laws of the States of Illinois, Michigan, and Missouri.

## JURISDICTION AND VENUE

5.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 29 U.S.C. § 1854(a) (AWPA), 29 U.S.C. § 201 *et seq.* (FLSA), and 28 U.S.C. § 1343.

6.     The Court has jurisdiction over Plaintiffs' pendant state law claims under 28 U.S.C. § 1367 (supplemental jurisdiction).  This Court is empowered to grant declaratory relief in this action pursuant to 28 U.S.C. §§ 2201 and 2202.

7.     Venue is proper in this district pursuant to the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. § 1854(a), as Defendant at a minimum has a business operation located at 450 East Adams, Waterman, Illinois, which is within the District.

## PARTIES

8. At all times relevant to this action, Plaintiff Roberto Perez-Perez was a migrant agricultural worker within the meaning of the AWPA, 29 U.S.C. § 1802(8)(A), and its attendant regulations.

9. At all times relevant to this action, Plaintiff Armando Nieves was a migrant agricultural worker within the meaning of the AWPA, 29 U.S.C. § 1802(8)(A), and its attendant regulations.

10. Plaintiffs were employed in agricultural employment of a seasonal nature, in that they detasseled and rogued corn, an agricultural commodity.

11. The permanent places of residence of all Plaintiffs are outside of Illinois, Michigan, and Missouri, the states in which they worked for Monsanto.

12. Plaintiffs were required to be absent overnight from their permanent places of residence to perform work for Defendant.

13. Monsanto is a Delaware corporation which has its corporate headquarters in St. Louis, Missouri, with its registered agent in Illinois being Illinois Corporation Service C, 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

14. According to its website, Monsanto has 404 facilities in 66 countries around the world. In the United States, it grows corn in states including Illinois, Michigan, and Missouri.

15. For the purpose of relation back and joinder, upon information and belief, Bayer AG, a German company, and Monsanto entered into an agreement in September 2016 to merge the two businesses. It is unknown at this time whether Bayer AG is a proper party to this action.

16.     At all times relevant to this action, Monsanto was an agricultural employer within the meaning of the AWPA, 29 U.S.C. § 1802(2) and was an employer within the meaning of the FLSA.

17.     At all times relevant to this action, the detasseling workers were "employees" of Defendant within the meaning of the AWPA and the FLSA.

18.     At all times relevant to this action, Monsanto "employed" the detasseling workers within the meaning of the AWPA, 29 U.S.C. § 1802(5) and the FLSA.

**FACTS**

19.     Defendant Monsanto grows thousands of acres of corn in the Midwest, and requires a large seasonal force during the summer months to help with its corn crop.

20.     Monsanto's production of corn involves workers doing two specialized tasks by hand.   One of these, detasseling, involves removing the top part – the tassel – from corn plants. The other, roguing, involves removing undesirable corn plants from the fields so that those plants do not grow to maturity.

21.     To meet its short-term need for workers to detassel and rogue, Monsanto engages farm labor contractors (the "Monsanto FLCs") in different parts of the country to recruit workers to come to the Midwest to perform this work.

22.     At all relevant times, Monsanto employed the detasseling workers jointly with these FLCs.

***Plaintiff Perez-Perez***

23.     Plaintiff Perez-Perez was recruited in Florida to work for Monsanto in 2015 by Benito Vasquez, a Monsanto FLC who at all relevant times did business as B & F Detasseling and recruited workers to perform detasseling and roguing work for Monsanto.

24.     Mr. Perez-Perez did detasseling and roguing work for Monsanto in Illinois in 2015.

25.     Mr. Perez-Perez was also recruited to work for Monsanto in 2012 by Braulino Monroy, a Monsanto FLC who recruited workers to perform detasseling and roguing work for Monsanto.

26.     Mr. Perez-Perez did detasseling work and roguing work for Monsanto in Michigan in 2012.

27.     Mr. Perez-Perez consents in writing to be a party plaintiff in this action.    (See Exhibit A, attached.)

### *Plaintiff Nieves*

28.     Plaintiff Nieves was also recruited by Benito Vasquez/B&F Detasseling to work for Monsanto.

29.     Mr. Nieves was recruited in 2014, and went to work for Monsanto that year in Missouri and Illinois, doing detasseling and roguing work.

30.     Mr. Nieves consents in writing to be a party plaintiff in this action.    (See Exhibit B, attached.)

### *Disclosure violations*

31.     At the time it recruited the detasseling workers, Defendant promised these workers -- either directly or indirectly, through the Monsanto FLCs -- certain conditions of employment.

32.     Defendant's disclosures were made in Worker Disclosure Statements, written in both English and Spanish, which described the terms of the employment for which the detasseling workers were recruited.

33.     The Worker Disclosure Statements given to the detasseling workers were prepared by Monsanto in substantial part.   In fact, upon information and belief, the only term or condition of employment added to the Worker Disclosure Statements by the Monsanto FLCs before the Statements were distributed to the detasseling workers was the pay rate.

34.     One of the disclosures that Defendant made to the detasseling workers was that the detasseling workers would be paid a certain amount – generally in the $70 to $90 range – per acre that they detasseled.

35.     Despite the representation that the detasseling workers would be paid per acre, Defendant failed to actually pay these workers per acre, and at the disclosed rate, in several respects.

36.     First, Defendant did not ensure that accurate records were kept as to the number of acres completed by each detasseling worker, and did not accurately measure the amount of work done by the detasseling workers in acres.   Upon information and belief, Defendant instead used other units – for example, they counted rows or "camas" (which refers to several rows) – to measure the work performed by the detasseling workers.   As a result, Defendant did not pay the detasseling workers for the actual number of acres they actually detasseled.

37.     Second, an area of corn was not considered completely detasseled until Monsanto made a determination that a part of the field had been adequately detasseled.   The detasseling workers rarely if ever detasseled an area of the field to Monsanto's satisfaction on their first pass through.   Instead, in order to meet the standards of Monsanto, the detasseling workers regularly had to pass through the fields doing detasseling multiple times, often having to detassel an area two, three, or even more times.

38.     Thus, to be considered to have actually completed an acre, or area, of work, the detasseling worker would often have had to have detasseled that same acre, or area, several times.   However, upon information and belief, this requirement and method of payment was not disclosed to the detasseling workers.

39.     Moreover, even after the detasseling workers had completed an area of work purporting to be an acre, upon information and belief, Monsanto regularly failed to pay them the disclosed "per acre" wage rate.

### *Failure to pay wages when due*

40.     Monsanto also failed to pay the detasseling workers their wages when due.

41.     The Monsanto FLCs, which distributed pay to the detasseling workers, did not receive funds from Monsanto for detasseling work until Monsanto approved particular areas of detasseling, which could take several weeks and could require as many as four pass throughs by the workers.

42.     As a result, because the Monsanto FLCs were generally very small entities with little capitalization or available funds to pay workers, the Monsanto FLCs, upon information and belief, would not pay workers the full piece rate they should have earned, in accordance with the disclosures, each week after the detasseling workers finished their work.   Instead, the FLCs would pay the workers a partial rate, with a promise to make up the missing funds later, even at the end of the season when the detasseling work was completed.

43.     For example, Plaintiffs Perez and Nieves were promised by Monsanto FLC Benito Vasquez/B&F Detasseling that they would receive additional pay after they completed their work for Monsanto and left the Midwest.   However, this pay was never provided, and these Plaintiffs were underpaid by thousands of dollars as a result.

44.     As a result, Defendant – either directly or through the Monsanto FLCs, with whom it jointly employed the detasseling workers – failed to pay the workers their full pay on a weekly basis, as was required.

45.     Moreover, despite the representation that missing funds would be made up later, not all of this "per acre" pay was actually provided to the detasseling workers.

46.     As a result of the failure to pay the entire promised amount per "acre," Defendant failed to pay the detasseling workers their wages when due, in violation of the AWPA, 29 U.S.C. §§ 1822(a), and its implementing regulations, 29 C.F.R. § 500.81.

### *Record-keeping and Pay Statements*

47.     Defendant's incomplete pay and irregular piece-rate measurements were exacerbated by Defendant's failure to keep full and accurate records of the hours worked by the detasseling workers.

48.     At the conclusion of each work week, Defendant – through the Monsanto FLCs – furnished pay statements to the detasseling workers.

49.     However, Defendant failed to provide the detasseling workers with information sufficient for them to verify that they were receiving the full amount of pay which they actually were owed.

50.     Instead, the pay statements provided by the Defendants failed to adequately disclose the method of payment to the detasseling workers, as the pay statements either did not reference acres at all, or referenced acres when in fact acres were not actually measured.   The pay statements also did not indicate how many times a detasseling worker had to pass through and detassel in a particular acre or other unit of the field.

51.     Defendant also failed to provide information to the detasseling workers which would allow them to measure how many acres they had actually detasseled, leaving the detasseling workers unaware of how much they would actually be owed under the disclosed rate.

52.     Upon information and belief, the pay statements also failed to disclose the number of hours the detasseling workers worked during the time that they did detasseling work.

*Working arrangement*

53.     The Worker Disclosure Statements provided to the detasseling workers constituted working arrangements between the detasseling workers and Defendant within the meaning of the AWPA, 29 U.S.C. § 1822(c).

54.     When the detasseling workers arrived at their workplaces, they were ready to comply with, and in fact did comply with, the terms of their working arrangements with Defendant.

55.     However, Defendant failed to meet the terms of these working arrangements:

a.  First, by not paying the detasseling workers in the method disclosed, i.e., by acres;

b.  Second, by not paying the detasseling workers at the full rate disclosed; and

c.  Third, by failing to pay the detasseling workers at least the applicable federal and/or state minimum wage rate, which is incorporated into the working arrangements.  The detasseling workers' effective hourly rate in each of the states that they worked did not meet both the federal minimum wage and the applicable state minimum wage.

*Minimum wage violations*

56.     As a result of the pay practices describe above, Defendant failed to pay the detasseling workers at least the federally-mandated and state-mandated minimum wage for every hour worked.

*Employer status*

57.     At all times relevant to this lawsuit, the detasseling workers were jointly employed by the Monsanto FLCs and Monsanto.

58.     Monsanto has the power to direct, control, and supervise the detasseling workers who worked in its corn fields, and it regularly exercised this power.

59.     Monsanto sets the terms and conditions of the detasseling workers' employment.

60.     The Worker Disclosure Statements provided to the detasseling workers were in large part prepared by Monsanto and sent to the Monsanto FLCs who then furnished the forms to the workers.

61.     Upon information and belief, the Monsanto FLCs themselves inserted only limited information before providing the Statements to the detasseling workers.

62.     Monsanto requires the Monsanto FLCs to sign "Detasseling/Roguing Contracts" each year that they recruit and furnish workers to Monsanto.

63.     Pursuant to these "Detasseling/Roguing Contracts," Monsanto FLCs may use Monsanto's payroll service to pay workers.   Many Monsanto FLCs, including B&K, did use Monsanto's payroll services.

64.     Monsanto circulates to the Monsanto FLCs its rules for detasseling and roguing work.   It asks the Monsanto FLCs to also write work rules for workers' detasseling and roguing, but these rules must be reviewed and approved by Monsanto.

65. Monsanto provides the tools, such as shovels, that the detasseling workers used to tassel and rogue Monsanto's crops.

66. When detasseling workers arrive to work for Monsanto each year, a Monsanto employee provides a safety presentation for the workers.

67. Monsanto regularly trains the detasseling workers on how to perform their job functions. For example, Monsanto employees train the workers on what to look for when roguing.

68. Managers from Monsanto regularly visit the fields where the detasseling workers work to ensure that workers are performing their work correctly.

69. Payroll sheets to be used recording the detasseling workers' work are provided by Monsanto to the Monsanto FLCs for the FLCs to complete. Upon information and belief, the Monsanto FLCs submit completed payroll sheets to Monsanto for its review.

70. Monsanto's Human Rights auditing department regularly conducts checks of the Monsanto FLCs' payroll records and disclosures.

71. Protective gear such as safety glasses, gloves, hats with nets on them, and straps to carry bottled water is provided to the workers by Monsanto.

72. Field toilets, hand-washing facilities, drinking water stations, and cups are provided to workers by Monsanto.

73. There is often a nurse, employed by Monsanto, in the fields while the detasseling workers are working. The nurse, among other things, would ordinarily be the person to report a work accident to Monsanto for Workers' Compensation purposes. The nurse also checks to ensure workers were properly using safety gear.

74.     Workers travel from housing sites to work sites in buses provided by and paid for by Monsanto.  Monsanto undertakes to ensure that drivers for the buses have proper drivers' licenses and have appropriate certificates from the United States Department of Labor.

75.     If there is a problem with housing provided to the detasseling workers, a Monsanto FLC contacts a Monsanto employee, often the site manager, who gets in touch with the landlord.

76.     Pursuant to Monsanto's "Expectations of Farm Labor Contractors Utilized by Monsanto Company," "[i]f a migrant worker has a concern or complaint about his or her treatment in Monsanto's fields he or she is encouraged to report the complaint to his or her Farm Labor Contractor.   Alternatively, a migrant worker may contact Monsanto's Business Conduct [Line] …and his or her concern will be investigated."

77.     The detasseling workers perform a function which was an integral part of Monsanto's process of corn production.

78.     All of the actions and omissions alleged in the paragraphs above were undertaken by the Defendant either directly or through its agents.

79.     Defendant's actions were willful.

## COUNT I –
## FAIR LABOR STANDARDS ACT

80.     Plaintiffs reallege and incorporate by reference the foregoing allegations as if set forth fully here.

81.     Plaintiffs bring their FLSA claims on behalf of themselves and all other detasseling workers who may opt in to this action pursuant to 29 U.S.C. § 216(b) and who worked for Monsanto from June 29, 2014 through the date of preliminary approval of the opt-in class.

82.     Plaintiffs and the detasseling workers were subject to the same policies and practices of Defendant, and were paid in the same manner.

83.     Defendant willfully failed to pay the minimum wage to Plaintiffs and the other detasseling workers for every hour that they worked.   This failure violates the Fair Labor Standards Act, 29 U.S.C. § 206(a) and its implementing regulations.

84.     Defendant also violated the FLSA by failing to keep records as required by statute, 29 U.S.C. § 211(c).

85.     Plaintiffs and the detasseling workers who opt into this action are entitled to their unpaid wages, plus an additional equal amount in liquidated damages, as a consequence of Defendant's unlawful actions and omissions, in accordance with 29 U.S.C. § 216(b).

86.     Plaintiffs and the detasseling workers who opt into this action are also entitled to costs of Court, pursuant to 29 U.S.C. § 216(b).

87.     Plaintiffs and the detasseling workers who opt into this action also seek, and are entitled to, the attorneys' fees incurred by their counsel, pursuant to 29 U.S.C. § 216(b)

## COUNT II –
## AWPA:  FAILURE TO COMPLY WITH WORKING ARRANGEMENT

88.     Plaintiffs reallege and incorporate by reference the foregoing allegations as if set forth fully here.

89.     This AWPA claim, and all of Plaintiffs' AWPA claims (Counts II through VI) are brought on behalf of all detasseling workers who were purportedly paid per acre and who worked for Defendant between June 29, 2012 through the date of the preliminary approval of the class.

90.    At all times relevant to this action, the detasseling workers were employed in agricultural employment involving the handling of an agricultural commodity in its unmanufactured state.

91.    Disclosures made to the detasseling workers on Worker Disclosure Sheets constituted working arrangements between Defendant and the detasseling workers within the meaning of 29 U.S.C. § 1822(c).

92.    Defendant violated these working arrangements without justification by failing to pay the detasseling workers the disclosed rate for every acre worked, in violation of the AWPA and its attendant regulations, 29 U.S.C. § 1822(c) and 29 C.F.R. § 500.72.

93.    Defendant also violated these working arrangements by not paying the detasseling workers in the method disclosed, i.e., by acres, and by failing to pay the detasseling workers at least the applicable federal and/or state minimum wage rate.

94.    The detasseling workers are therefore entitled to monetary damages, declaratory relief, and injunctive relief under the AWPA.

### COUNT III –
### AWPA:   FAILURE TO PAY WAGES WHEN DUE

95.    Plaintiffs reallege and incorporate by reference the foregoing allegations as if set forth fully here.

96.    Defendant failed to pay the detasseling workers for all the work they performed.

97.    In addition, Defendant made some payments to the detasseling workers well after their work had been performed.

98.    By these actions, Defendant failed to pay the detasseling workers their wages when due, in violation of the AWPA and its attendant regulations, 29 U.S.C. § 1822(a) and 29 C.F.R. § 500.81.

## COUNT IV –
## AWPA:  FAILURE TO PROVIDE ACCURATE WRITTEN DISCLOSURES

99.     Plaintiffs reallege and incorporate by reference the foregoing allegations as if set forth fully here.

100.    Defendant failed to provide the detasseling workers with written disclosures which accurately disclosed the pay rate that the detasseling workers would be paid for their work, in that the disclosures indicated that the detasseling workers would be paid by the acre but in fact they were not so paid.

101.    Instead, Defendant knowingly provided false and misleading information to the detasseling workers regarding the terms and conditions of their employment, in violation of the AWPA and its attendant regulations, 29 U.S.C. § 1821(f) and 29 C.F.R. § 500.77.

## COUNT V –
## AWPA:  FAILURE TO MAKE, KEEP, AND PRESERVE
## ADEQUATE PAYROLL RECORDS

102.    Plaintiffs reallege and incorporate by reference the foregoing allegations as if set forth fully here.

103.    Upon information and belief, Defendant's payroll records did not accurately record the number of acres worked by the detasseling workers.

104.    Defendant also failed to keep complete and accurate records of the hours worked by the detasseling workers.

105.    Defendant therefore failed to make, keep, and preserve payroll records as required by the APWA and its implementing regulations, 29 U.S.C. § 1821(d)(1) and 29 C.F.R. § 500.80(a).

## COUNT VI –
## AWPA:  FAILURE TO PROVIDE ACCURATE PAY STATEMENTS

106.    Plaintiffs reallege and incorporate by reference the foregoing allegations as if set forth fully here.

107.    Defendant did not provide the detasseling workers with complete and accurate itemized pay statements on each pay day.    The paystubs provided by Defendant did not accurately reflect the piece rate or the hours that the detasseling workers worked.

108.    Defendant therefore violated the AWPA and its implementing regulations, 29 U.S.C. § 1821(d)(2) and 29 C.F.R. § 500.80(d).

## COUNT VII –
## ILLINOIS MINIMUM WAGE LAW

109.    Plaintiffs reallege and incorporate by reference the foregoing allegations as if set forth fully here.

110.    Plaintiffs bring their Illinois Minimum Wage Law ("IMWL") claim on behalf of themselves and a sub-class of detasseling workers who worked for Monsanto in the State of Illinois between June 29, 2014 and the date of the preliminary approval of the class (the "Illinois sub-class").

111.    Defendant is an employer within the meaning of the IMWL, 820 I.L.C.S. § 105/3(c).

112.    Plaintiffs and the other members of the Illinois sub-class are employees within the meaning of the IMWL, 820 I.L.C.S. § 105/3(d).

113.    Defendant was required, pursuant to the IMWL, 820 I.L.C.S. § 105/4(a)(1), to pay Plaintiffs and the members of the Illinois sub-class at least the minimum wage under Illinois law, which was $8.25 per hour in the relevant years.

114.    Defendant knew or should have known of its obligation to pay the minimum wage to Plaintiffs and the Illinois sub-class members, and therefore its violation was willful.

115.    As a result of these violations, Plaintiffs and the members of the Illinois subclass are entitled to their unpaid wages, prejudgment interest, damages, reasonable attorney's fees, and costs of this action.

**COUNT VIII --**
**<u>ILLINOIS MINIMUM WAGE PAYMENT & COLLECTION ACT</u>**

116.    Plaintiffs reallege and incorporate by reference the foregoing allegations as if set forth fully here.

117.    Plaintiffs bring this Illinois Wage Payment and Collection Act ("IWPCA") claim on behalf of themselves and the members of the Illinois sub-class.

118.    Defendant, either directly or through their agent, promised and agreed to pay Plaintiffs and the members of the Illinois subclass for their labor.

119.    Pursuant to IWPCA, 820 ILCS 115/1 et seq., Plaintiffs and each member of the Illinois sub class are entitled to their wages, pursuant to this agreement.

120.    Defendants have failed to pay the members of the Illinois sub class for all of their labor commencing at least in 2012 to the present, pursuant to 820 ILCS 115/4 and, as a direct and proximate result thereof, Plaintiffs have been damaged in an unknown amount.

121.    As a result of these violations, Plaintiffs and the members of the Illinois subclass are entitled to their unpaid wages, prejudgment interest, damages, reasonable attorney's fees, and costs of this action.

## COUNT IX --
## QUANTUM MERUIT – MISSOURI LAW

122.     Plaintiffs reallege and incorporate by reference the foregoing allegations as if set forth fully here.

123.     Plaintiffs bring their Missouri quantum meruit claim on behalf of a sub-class of detasseling workers who worked for Monsanto in the State of Missouri between June 29, 2012 through the date of the preliminary approval of the class (the "Missouri sub-class")

124.     Defendant requested that the Missouri sub-class members provide labor for Monsanto.

125.     The Missouri sub-class members provided labor for the benefit of Defendant.

126.     Defendant has received and accepted the direct benefit of the labor of the Missouri sub-class members, which labor had a reasonable value.

127.     Defendant failed to pay the reasonable value for the labor of the Missouri sub-class members.

128.     Defendant's continued retention of the benefits of the labor performed by the Missouri sub-class members would be unjust.

129.     The Missouri sub-class members are entitled to compensation for the fair and reasonable value of the labor and expenses they provided to Defendant for the period starting five years from the filing of this proceeding.

## COUNT X --
## UNJUST ENRICHMENT – MISSOURI LAW

130.     Plaintiffs reallege and incorporate by reference the foregoing allegations as if set forth fully here.

131.     Plaintiffs bring their Missouri unjust enrichment claim on behalf of the Missouri sub-class.

132.     Defendant requested that the Missouri sub-class members provide labor for Monsanto.

133.     The Missouri sub-class members provided labor for the benefit of Defendant.

134.     Defendant received, accepted, and was enriched by the labor of the Missouri sub-class members.

135.     Defendant's continued retention of the benefits of the labor performed by the Missouri sub-class members would be unjust.

136.     The Missouri sub-class members are entitled to compensation for the fair and reasonable value of the labor and expenses they provided to Defendant for the period starting five years from the filing of this proceeding.

## PRAYER FOR RELEIF

WHEREFORE, Plaintiffs requests that this Court enter an Order:

a.  declaring this action to be maintainable as a FLSA collective action pursuant to 29 U.S.C. § 216, allowing for notice to be provided to Monsanto detasseling workers who worked in the relevant years, and allowing Monsanto detasseling workers to opt into the action;

b.  certifying this case as a class action under Fed. R. Civ. P. 23, finding Plaintiffs as adequate Class Representatives, and finding their attorneys as adequate Class Counsel;

c.  declaring that Defendant violated the AWPA and the law of Illinois;

d.  permanently enjoining Defendant from further violations of the AWPA and the law of Illinois;

e. granting judgment to Plaintiffs and the other workers who opt-in pursuant to 29 U.S.C. § 216(b) on their FLSA claims and awarding each of them their unpaid wages and an equal amount in liquidated damages;

f. Granting judgment to Plaintiffs and the detasseling workers on their AWPA claims and awarding each of them damages as provided for by statute;

g. Granting judgment to the members of the Illinois and Missouri subclasses on their state law claims, and awarding each of them their damages as provided for by law;

h. Awarding Plaintiffs prejudgment and postjudgment interest as allowed by law;

i. Awarding the Plaintiffs their costs, reasonable attorneys' fees and a reasonable incentive award for serving as the class representatives; and

j. Granting such further relief as the Court finds just.

Respectfully submitted,

/s/    Curtis C. Warner
By:  Curtis C. Warner
WARNER LAW FIRM, LLC
350 S. Northwest HWY Ste. 300
Park Ridge, IL 60068
T:   (847) 701-5290
cwarner@warner.legal

MICHIGAN MIGRANT LEGAL ASSISTANCE
PROJECT INC.
By: Teresa Hendricks
*(pro hac vice motion to be filed)*
1104 Fuller Ave. NE
Grand Rapids, MI 49503-1371
T:   (616) 454-5055
thenricks@migrantlegalaid.com

KAKALEC & SCHLANGER, LLP
By:  Patricia Kakalec
*(pro hac vice motion to be filed)*
85 Broad Street, 18th Floor
New York, NY 10004

T: (212) 500-6114
F.  (646) 612-7996
pkakalec@kakalec-schlanger.com

*Attorneys for Plaintiffs*

## JURY DEMAND

Plaintiffs demand a trial by jury.

Respectfully submitted,

/s/    Curtis C. Warner
By:  Curtis C. Warner
WARNER LAW FIRM, LLC
350 S. Northwest HWY Ste. 300
Park Ridge, IL 60068
T:   (847) 701-5290
cwarner@warner.legal

MICHIGAN MIGRANT LEGAL ASSISTANCE
PROJECT INC.
By: Teresa Hendricks
*(pro hac vice motion to be filed)*
1104 Fuller Ave. NE
Grand Rapids, MI 49503-1371
T:   (616) 454-5055
thenricks@migrantlegalaid.com

KAKALEC & SCHLANGER, LLP
By:  Patricia Kakalec
*(pro hac vice motion to be filed)*
85 Broad Street, 18th Floor
New York, NY 10004
T: (212) 500-6114
F.  (646) 612-7996
pkakalec@kakalec-schlanger.com

*Attorneys for Plaintiffs*