IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| ARMANDO NIEVES, individually and on behalf of similarly situated persons, and ROBERTO PEREZ-PEREZ, individually, <br><br> Plaintiffs, <br><br> v. <br><br> MONSANTO COMPANY, <br><br> Defendant. | Case No. 17-50188 <br><br> District Judge John Roberts Blakey <br><br> Magistrate Judge Iain D. Johnston |

**PLAINTIFFS' UNOPPOSED MOTION FOR CONDITIONAL CLASS CERTIFICATION, PRELIMINARY APPROVAL OF CLASS SETTLEMENT, APPROVAL OF NOTICE PLAN, AND SCHEDULING OF FINAL HEARING**

NOW COMES Plaintiffs Armando Nieves and Roberto Perez-Perez individually and on behalf of a proposed settlement class, by and through their counsel, and moves this Honorable Court to (1) grant preliminary approval to the Settlement Agreement and Release (the "Settlement Agreement") (attached hereto as Exhibit 1) between Plaintiffs and Defendants Monsanto Company ("Monsanto"); (2) conditionally approve the settlement class, and appoint settlement class counsel and class representative; (3) approve the proposed direct class notice plan and the class notice and claim form; and (4) schedule a final approval hearing.

As described below, the resolution of this matter and conditional certification of a settlement class settlement is appropriate. The settlement class meets Rule 23 standards, the settlement is fair and reasonable, and the settlement notice is reasonably calculated, under all the circumstances, to apprise class members of the action and to give them an opportunity to object or opt-out. For these reasons, as discussed more fully below, Plaintiffs request that the Court grant preliminary approval of the class settlement and direct notice to the settlement class members. Plaintiffs note that Monsanto, which denies liability and believes this class

**Error! Unknown document property name.**

adjudication would be found inappropriate if the case were to be fully litigated, does not oppose the present Motion.

## BACKGROUND

Plaintiffs Armando Nieves and Roberto Perez-Perez filed a lawsuit in the United States District Court for the Northern District of Illinois, captioned *Perez-Perez v. Monsanto Company* (the "Litigation"), alleging claims under the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA") and a breach of contract claim under Illinois common law. Plaintiffs and the proposed settlement class members are migrant farmworkers who did corn detasseling, rouging, and/or related work on farms owned or controlled by Monsanto in Illinois between 2011 and 2015. All Plaintiffs and proposed class members were recruited and employed by the Farm Labor Contractor Benito Vasquez (who did business as B&F Detasseling).

Plaintiffs allege that they were not paid as agreed upon for their work. Specifically, they claim that their detasseling work was not compensated as promised in the AWPA disclosure statement provided to workers as required by law. They also claim that they failed to receive proper notice of the terms of their employment, the pay they would receive, and the basis for their pay. For these violations, Plaintiffs sought damages for violations of the AWPA and for breach of contract; AWPA provides for damages of up to $500 per violation per worker, or actual damages, whichever is greater. See 29 U.S.C. § 1854(c).

On January 5, 2018, Plaintiffs filed a First Amended Complaint, and on September 14, 2018, Plaintiffs filed their Second Amended Complaint.

The parties engaged in some written discovery in this case, but no depositions have yet been held. The parties also participated, on December 17, 2018, in a day-long settlement conference with Magistrate Judge Iain D. Johnston. At the settlement conference, the parties did not resolve all their differences, but they made progress toward what was ultimately the

settlement in this case. In the period after the settlement conference, counsel for both parties resolved the remaining differences and came to the Settlement Agreement which is now presented to the Court.

## ARGUMENT

I. <u>The Court Should Conditionally Certify a Settlement Class.</u>

The parties have agreed that a settlement class (the "Settlement Class") be defined as:

> All persons who were recruited and employed by Farm Labor Contractor Benito Vasquez (also known as B&F Detasseling), and who performed corn detasseling, rouging, and/or related work on farms owned or otherwise controlled by Monsanto Company in Illinois between 2011 and 2015.

(Exhibit 1, Settlement Agreement & Release, at 1.)

Based upon documents provided by Monsanto, the number of members of the settlement class is believed to be approximately 250-300 individuals. Plaintiffs contend that this proposed Settlement Class meets the requirements of Rule 23(a) in a settlement context because: (1) the approximately 250-300 potential class members are too numerous to be joined; (2) class members share a common interest in seeking redress for the violations of the AWPA and common law; (3) the named Plaintiff's claims are typical of those of the Settlement Class Members; and (4) the named Plaintiff is an adequate class representative because he has no interests antagonistic to the Settlement Class's interests and he is represented by experienced counsel.

    A.    <u>Joining all members of the Settlement Class is impracticable.</u>

Rule 23(a)(1) requires that "the class [be] so numerous that joinder of all members is impracticable." This case meets that requirement, as the Parties have identified approximately 250-300 potential members of the Settlement Class.

Moreover, courts have found that joinder is impractical where class members are geographically dispersed and are non-English speaking migrant workers, like the proposed

**Error! Unknown document property name.**         3

Settlement Class members here. Unfamiliarity with the legal system and the small size of individual claims are also factors favoring a numerosity finding. *See Rosiles-Perez v. Superior Forestry Serv., Inc.*, 250 F.R.D. 332, 338-39 (M.D. Tenn. 2008); *Recinos-Recinos v. Express Forestry, Inc.*, 233 F.R.D. 472, 478 (E.D. La. 2006) (finding joinder impracticable for class of migrant H-2B guest workers from Guatemala and Mexico); *Leyva v. Buley*, 125 F.R.D. 512, 515 (E.D.Wash. 1989) ("joinder of 50 individual migrant workers as plaintiffs would be extremely burdensome, especially in light of their alleged lack of sophistication, limited knowledge of the American legal system, limited or non-existent English skills, and geographic dispersion").

  B. <u>There are questions of law and fact common to the Settlement Class.</u>

  Rule 23(a)(2) requires that there be questions of law or fact common to the class. This in turn means that class members' claims "must depend upon a common contention." *Wal-Mart Stores Inc. v. Dukes,* 564 U.S. 338, 350 2551 (2011). Here, Plaintiff's believe that the proposed class meets the commonality requirement as the common issues of law predominate based upon a common nucleus of operative facts. All workers were recruited for work by the same Farm Labor Contractor, Benito Vasquez, and all worked at farms owned or otherwise controlled by Monsanto. They all did the same kind of work – corn detasseling, roguing, and/or related work – and they were paid by the same method.

  Legally, Plaintiffs believe that the issues are common to the class members as well. Plaintiffs' claims under the AWPA pertain to the adequacy of the disclosures and whether payment to the migrant workers was made as disclosed. Questions of whether the disclosure and payment violate the AWPA and give rise to statutory penalties are common issues to all proposed class members. Similarly, the question of whether Defendant breached a contract with the proposed class members involves common legal analysis – whether there was a contract, what the terms of the contract were, and whether there was a breach of such contract – across the

claim. And the question of whether Monsanto was liable as an employer of the members of the Settlement Class is another common legal and factual issue.

      C.      <u>Plaintiff Armando Nieves's claims are typical of those of the proposed class.</u>

Rule 23(a)(3) requires that the "claims . . . of the representative parties [be] typical of the claims . . . of the class." Commonality and typicality requirements under Rule 23 are interrelated and often merge. *Dukes*, 131 S. Ct. at 2551. A "'plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'" *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996) (*quoting* 1 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 3:13 (4th ed. 2008)). "The typicality requirement is meant to ensure that the named representative's claims have the same essential characteristics as the claims of the class at large." *Thompson*, 250 F.R.D. at 622 (citing *Oshana v. CocaCase Cola Co.,* 472 F.3d 506, 514 (7th Cir. 2006)

Here, Armando Nieves was recruited by Benito Vasquez and worked for Monsanto within the relevant time period. Plaintiffs believe that his claims related to disclosure and payment have the same essential characteristics of the other workers, as he did the same work and was paid in the same manner.

    D.  <u>Armando Nieves and Class Counsel Will Fairly and Adequately Protect the Interests of the Proposed Class.</u>

The adequacy of representation requirement is satisfied because Plaintiff Nieves's interests are co-extensive with, and not antagonistic to, the interests of the Settlement Class and because Plaintiff has an interest in this case via his individual claims. *See Dukes,* 131 S.Ct. 2541, 2551 (citations omitted). Here, as discussed above, Plaintiff Nieves was a migrant farmworker recruited by Vasquez who did the same work as the class members and who has no

interests which differs from them. He fits the class definition, has no conflict with the class, and has no claims against Defendant other than those raised in the instant case.

The class counsel are experienced class action litigators and have significant experience bringing farmworkers cases. *See* Declarations of Patricia Kakalec, Curtis Warner, and Teresa Hendricks (attached hereto as Exhibit 2). Plaintiffs' counsel Curtis Warner specifically has been approved as class counsel in this district. *See, e.g., Cavin v. Home Loan Center, Inc.,* 236 F.R.D 387, 395 (N.D. Ill. 2006) ("The Court finds that Mr. Warner [is]. . . 'experienced, competent, qualified and able to conduct the litigation vigorously'"); *Mussat v. Global Healthcare Resource, LLC,* 2013 U.S. Dist. LEXIS 35107 * 13 (N.D. Ill. Mar. 13, 2013) (noting that the defendant did not challenge Mr. Warner's adequacy and finding, "class counsel has significant experience bringing class-action claims").

    E.    <u>Rule 23(b)(3)'s Requirements are Satisfied.</u>

Class certification is appropriate under Rule 23(b)(3) where (1) common questions of law or fact predominate over individual questions; and where (2) a class action represents a superior method for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3); *In re Scrap Metal Antitrust Litigation*, 527 F.3d 517, 535 (6th Cir. 2008). Plaintiffs believe that both of these requirements are satisfied in the present case. The common questions of whether there were violations of the AWPA and a breach of contract predominate over any individual issues. Furthermore, a class action is the superior means of resolving these issues, as the alternative would be an excess of additional lawsuits all raising identical allegations.

    1.    <u>Predominance</u>

Rule 23(b)(3) is met when "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3)'s predominance inquiry tests "whether the proposed classes are

sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc*, 521 U.S. at 623. "The predominance requirement is met if this common question is at the heart of the litigation." *Powers v. Hamilton County Public Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007) (*citing Am. Med. Sys.,* 75 F.3d at 1080)).

The predominance requirement is met when a common factual link between the class members and defendants under which the law requires a remedy exists. *See Smith v. Nike Retail Servs. Inc*. 234 F.R.D. 648, 666 (N.D. Ill. 2006); 7A Charles Alan Wright, et al., *Federal Practice and Procedure* § 1778, at 528 (2d ed. 1986) (Predominance is met "when common questions represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for having the dispute on a representative rather than on an individual basis").

In this case, Plaintiffs believe that the common issues relate to recruitment, disclosure, and pay. The practices at issue with regard to each of these issues was consistent throughout the class, and thus these are all issues which can be resolved on a class basis.

    2.    <u>Superiority</u>

Class resolution of this matter is superior to having multiple potential actions proceeding. "Rule 23(b)(3) was designed for situations such as this, in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate." *Murray v. GMAC Mortgage Corp.,* 434 F.3d 948, 953 (7th Cir. 2006) (*citing Mace v. Van Ru Credit Corp*., 109 F.3d 344-45 (7th Cir. 1997)). Here, individual class members – all migrant farmworkers – are not likely to have an interest in instituting or controlling their own individual actions, in large part because of the difficulty this would pose for migrant farmworkers. Moreover, the relatively small size of individual class members' claims substantially diminishes the interest of class members in controlling the prosecution of separate actions. For these reasons, courts have found

that class litigation is superior in cases brought by migrant workers. *See, e.g., Jimenez v. GLK Foods, Inc.*, 12-C-209, 2014 U.S. Dist. LEXIS 75977, *34-35 (June 4, 2014); *Garcia-Celestino v. Ruiz Harvesting, Inc.,* 280 F.R.D. 640, 648-49 (M.D. Fla. 2012); *Jean v. Torrese*, 278 F.R.D. 656, 663 (S.D. Fla. 2011).

In addition, because the named Plaintiff and members of the putative class all were recruited by the same Farm Labor Contractor and all worked at Monsanto owned or controlled farms in Illinois, manageability concerns favor the class action mechanism. Plaintiffs believe that it would be more efficient to resolve the issues which arose as to these workers in a single case.

For all of these reasons, the Court should conditionally certify – for the purpose of the proposed Class Settlement – a settlement class as provided in the parties' Settlement Agreement.

II.  Preliminary Approval of the Class Settlement on Behalf of the Settlement Class is Warranted.

    A. Standards

FRCP 23(e) requires a Court to determine whether a final settlement binding on class members is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). When parties to a class action move for preliminary (as opposed to final) approval, "[t]he hearing on the motion is not a 'fairness hearing'; its purpose is to determine whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Schulte v. Fifth Third Bank,* 2010 WL 8816289 at *2 (N.D. Ill. Sept. 10, 2010). Thus,

> at the preliminary approval stage, the extent of the district court's inquiry into the appropriateness of class certification and the reasonableness of the settlement terms depends, as it must, on the circumstances of the individual case. Where the size of the class is small, the cost of notice minimal, and the issues discrete, the court may be able to determine that class certification is proper and the settlement is 'within the range of possible approval' with minimal fuss.

*In re NCAA Student-Athlete Concussion Injury Litig.,* 2016 WL 305380 at *6 (N.D. Ill. Jan. 26, 2016). *See also Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982) (at the preliminary approval stage, the Court's analysis should focus on whether the settlement falls "within the range of possible approval," rather than on making a final determination of fairness). "There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." 4 Newberg on Class Actions § 11:41; *see also Schulte,* 2010 WL 8816289 at *4 n5. Such a presumption is appropriate here.

"Federal courts look with great favor upon the voluntary resolution of litigation through settlement" applies with "particular force regarding class action lawsuits." *Airline Stewards and Stewardesses Ass'n, Local 550 v. Trans World Airlines, Inc.*, 630 F. 2d 1164, 1167 (7th Cir. 1980). "Courts also encourage parties to settle class actions early, without expending unnecessary resources." *McCue v. MB Fin., Inc.,* 15-cv-988, 2015 U.S. Dist. LEXIS 96653 *9 (N.D. Ill. July 23, 2015) (*citing Yuzary v. HSBC Bank USA, N.A*., No. 12 Civ. 3693, 2013 U.S. Dist. LEXIS 144327, 2013 WL 5492998, at *5 (S.D.N.Y. Oct. 2, 2013) ("early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere")

This Court, in granting final approval to the class action settlement in *In re Mexico Money Transfer Litig.,* 164 F. Supp. 2d 1002 (N.D. Ill. 2000) (Pallmeyer, J), stated:

> Courts favor the resolution of a class action by way of settlement and will approve such a settlement if it is fair, reasonable, and adequate when viewed in its entirety. *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). In evaluating a proposed settlement, the court recognizes that the 'essence of settlement is compromise' and will not represent a total win for either side. *Id.* at 1200, *quoting Armstrong v. Board of Sch. Dir*., 616 F.2d 305, 315 (7th Cir. 1980). Accordingly, the court is not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial. *See In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 534 (D.N.J. 1997), aff'd, 148 F.3d 283 (3d Cir. 1998); *E.E.O.C. v. Hiram Walker & Sons*, 768 F.2d

884, 889 (7th Cir. 1985). In assessing the fairness, reasonableness and adequacy of a class settlement, the court must balance six factors:

(a) the strength of plaintiffs' case, weighed against the settlement offer;

(b) the complexity, length, and expense of further litigation;

(c) the presence of collusion between the parties;

(d) the opinion of competent counsel;

(e) the reaction of class members to the proposal; and

(f) the stage of proceedings and discovery completed. *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 308 (7th Cir. 1985).

*In re Mexico Money Transfer Litig.,* 164 F. Supp. 2d at 1014.

B. The Settlement Agreement terms

Pursuant to the Settlement Agreement, the parties have agreed to the settlement of this action on the material financial terms as follows:

(1) The class settlement amount is $79,500. Under the agreement, each member of the Settlement Class who submits a claim and does not opt-out (the "Claimants") will receive a check for $275 for each year that the Claimant was recruited and employed by Vasquez and performed corn detasseling, rouging, and/or volunteering work on farms owned or otherwise controlled by Monsanto in Illinois between 2011 and 2015. (Exhibit 1 (Settlement Agreement), ¶ 3.1) In the event that the total claims filed under the Settlement Agreement are less than $79,500 the remaining money shall be divided evenly among Claimants up to a maximum payment to each Claimant of $500 per worker per year. (Id. ¶ 3.5)

(2) Relief to the Named Plaintiffs: Subject to Court approval, Defendant shall pay Plaintiffs Armando Nieves and Roberto Perez-Perez $3,000 as incentive awards for their work as class representatives. Both Mr. Nieves and Mr. Perez-Perez participated regularly in the

preparation of and litigation of this case, devoting meaningful time and attention to their responsibilities.[1]

(3) In addition to the comments in subparagraphs (1) and (2), Class Counsel shall ask the Court to approve their request that $32,500 be paid as reasonable attorneys' fees and reasonable and necessary expenses (including the costs to administer the settlement) to be paid by Monsanto. Monsanto does not oppose this request.

Class members will be provided notice of the proposed attorney fee and costs award and will have the opportunity to object if they perceive the amount not to be fair, reasonable and adequate. In addition, two weeks prior to the proposed objection submission deadline, Plaintiffs' counsel will file a petition for attorney's fees and costs under a Lodestar calculation.

(4) The Settlement Agreement provides that the settlement amount is not reversionary. In the event that not all funds are claimed or re-distributed as provided by the agreement, a *cy pres* distribution shall be made to the Association of Farmworker Opportunity Programs, a not-for-profit organization which serves migrant farmworkers such as the class members here.

C. <u>The Agreement here is fair and reasonable.</u>

Considering the above factors and the terms of the Settlement Agreement, the Settlement Agreement should be preliminarily approved here. Counsel for Plaintiffs have reviewed and analyzed the legal and factual issues presented in this action and have weighed the benefit to the class members against the risks and expense involved in pursuing the litigation to conclusion, the protracted nature of the litigation and the likelihood, costs and possible outcome of one or more

---

[1] Plaintiff Roberto Perez-Perez was a class representative in the parties' initial Complaint and their First Amended Complaint. Under the Second Amended Complaint, he was not a class representative, although he remains a class member. His work as a class representative throughout much of the case and his work in support of the case merits the incentive award despite him not being put forward as a class representative upon conditional certification.

Error! Unknown document property name.            11

procedural and substantive appeals. Based on their review and analysis, Plaintiffs and Defendant entered into the Settlement Agreement attached hereto.

*Strength of Plaintiffs' case, weighed against the settlement offer*

The Agreement here provides that each individual who files a claim for will receive at least $275, and as much as $500, for each year that they worked. In the absence of a settlement here, Plaintiffs would have to establish that they had not been paid in accordance with the disclosures, an issue which is contested. Specifically, there are factual issues about way piece rates would be calculated for the work at issue, and there are issue with regard to what work would be paid hourly and what work would be paid by the piece rate. There are also questions about the meanings of the disclosure provided under the AWPA. These issues go to whether Plaintiffs can establish their AWPA claim.

Second, Monsanto contests that it is an employer of the Plaintiffs and the members of the Settlement Class here, and it contends that, as a result, it is not liable for the violations asserted. At the least, this case presents significant factual and legal issues with regard to Monsanto's liability as a joint employer – with the Farm Labor Contractor Benito Vasquez – and if Plaintiffs did not succeed in their claim that Monsanto was an employer, the class would have no recovery.

Third, Monsanto, while not opposing the present Motion, has also made clear that it does not believe that this case, if fully litigated, would be found to be suitable for class adjudication. Monsanto does not believe that the requirements of Rule 23(a) or (b) would be satisfied were a motion for class certification filed after full litigation. Such a possibility could mean that many class members would have to bring individual claims to recover anything, a result that could prove difficult or impossible for many class members.

Finally, while the AWPA provides for up to $500 in damages per violation, courts do not always award the full $500 per violation. Even if the Plaintiffs established the violations claimed

here, they would not necessarily recover $500 per violation. Considering these factors against the certainty of a settlement weighs in favor of approval here

*The complexity, length, and expense of further litigation, and the state of the proceedings.*

In the instant case, although it had been pending for some time, there is significant discovery which would need to go take place if the matter was to proceed to trial. Depositions, for example, have not yet occurred, and a deposition of Benito Vasquez in Florida would likely be needed. Mr. Perez-Perez and Mr. Nieves would likely need to travel for depositions and trial. Significant further expense and time would be required if the case were not settled.

The monetary value of the settlement here must be compared with "the possibility of some greater relief at a later time, taking into account the additional risks and costs that go hand in hand with protracted litigation." *Gottlieb v. Wiles*, 11 F.3d 1004, 1015 (10th Cir. 1993), abrogated on other ground by *Devlin v. Scardelleti*, 536 U.S. 1 (2002). When weighted against potential relief and the related expense of the litigation, recovery of the amount here is a settlement amount which warrants approval. As one court has observed, it is sometimes better "to take the bird in the hand instead of the prospective flock in the bush." *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974) (citations and quotations omitted). This case is complex and carries legal and factual risks; litigating the case to trial would likely consume great time and expense. The uncertain disposition of the litigation, as well as these unresolved questions, created substantial complexity and concordant risk for Plaintiffs and the class, thus weighing in favor of recovery as guaranteed by the Settlement Agreement.

*There is no collusion between the parties*

The parties' settlement is a reasonable resolution of a bona fide dispute in contested litigation. This case was settled after a settlement conference and significant other back and forth conversations over a long period of time.

*The opinion of competent counsel*

Counsel for the parties reached the settlement after arms-length negotiations. In class counsel's view, given the attendant expense, risks, difficulties, delays, and uncertainties of litigation, trial, and post-trial proceedings, the Settlement Agreement provides substantial benefits to members of the Settlement Class.

*The incentive awards and attorneys' fees are appropriate here*

The amount of $3,000 as an incentive award is not unreasonable in a class action. *See, e.g., Prusak v. Lumber Liquidators, Inc.,* 12 C 6984, (N.D. Ill. Nov. 11, 2014) (Pallmeyer, J.) (approving $5,000 service award); *Florence Mussat M.D., S.C. v. Betterdoctor, Inc.*, 13 C 8377 (N.D. Ill. July 10, 2014) (approving $10,000 service award); *see e.g., Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (upholding $25,000 incentive award). The payment of the incentive award does not affect the amount of recovery to the class members. Class members will be provided notice of the proposed incentive award and will have the opportunity to object if they perceive the amount not to be fair, reasonable and adequate.

As to fees, the Supreme Court has expressed a preference that parties agree to the amount of the fee: "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Here, the Parties have done so. The amount agreed to for fees and costs here is substantially below the lodestar amount of fees incurred by counsel for Plaintiffs, who have filed the Complaint, amended it twice, attended numerous conferences including a settlement conference, reached a settlement agreement, and made the instant motion. Moreover, counsel's fees will be paid separately and do not reduce the amount to be received by Claimants.

III.    The Court should approve the Notice, Plan and Plan Dates.

Class notice should be "the best notice that is practicable under the circumstances." Fed R. Civ. P. 23(c)(2)(B). Notice is adequate if it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 174 (1974). Plaintiffs assert that the proposed class notice satisfies these requirements.

The notice plan proposed here provides that members of the Settlement Class be mailed the Notice of Class Action Settlement (the "Class Notice") (attached hereto as Exhibit 3). The notice will be provided to class members in both Spanish and English.[2] In addition, class counsel will advertise in print media and on the radio in an effort to try to locate members of the Settlement Class, and will operate a website at migrantlegalaid.com/classaction. That website shall contain the same language as set forth on Exhibit A to the parties' Settlement Agreement and may include a link to the notice and Claim Form approved by the Court.

Class notice will be mailed 20 days after preliminary approval of the Settlement Agreement (the "Notice Mailing Date") and class members shall have 180 days to complete claim forms and provide them to Class Counsel.

In addition, Defendant will cause to be sent the required notices under the Class Action Fairness Act, 28 U.S.C. § 1715(b) and its subsections, upon the appropriate officials.

The Notice, attached hereto, provides the procedure for opt-ing out and informs class members of the effects of their actions. It explains the Plaintiffs' claims and the procedure for presenting objections. It also provides that questions may be presented to Plaintiffs' counsel, and it includes methods (such as notices in Spanish media and the notice on the Michigan Migrant

---

[2] The class notice attached is in English but it will be translated into Spanish, as will the claim form, and both will be provided to class members.

Error! Unknown document property name.    15

Legal Assistance Project website) which are particularly focused on reaching the class members here. Considering all of these factors, the notice is appropriate and should be approved and ordered by the Court.

Plaintiffs ask that the Court also set a hearing for final approval of the Class Settlement, and set dates by which any objections to the class settlement should be made. Those dates, as agreed in the parties' Settlement Agreement, are set forward in the parties' Proposed Order, attached hereto as Exhibit 4.

## CONCLUSION

For the reasons set forth above, Plaintiffs believe that settlement of this action on the terms and conditions set forth in the Settlement Agreement is fair, reasonable and adequate, and would be in the best interests of the members of the Class. As discussed above, Monsanto will not be opposing this Motion, although it does not agree with all of Plaintiffs' statements contained herein, especially as they relate to liability and to the suitability of class adjudication if the case were fully litigated.

WHEREFORE, Plaintiffs respectfully request this Honorable Court enter an Order Preliminarily Approving the Class Action Settlement which:

(i) Conditionally certifies the proposed class for the purpose of the parties' settlement, and approves the class representative and class counsel;

(ii) Preliminarily approves of the purposed settlement and the settlement class;

(iii) Approves and orders the Notice as set forth in the Settlement Agreement;

(iii) Sets dates for claims to be made, opt-outs, petition for attorney's fees and objections to be submitted, as provided in the Settlement Agreement and the proposed Order; and

(iv) Schedules a hearing for final approval of the class settlement.

Respectfully submitted,

/s Patricia Kakalec
Patricia Kakalec
Kakalec Law PLLC
11 Broadway, Suite 615, New York, NY 10004
195 Montague Street, 14th Floor, Brooklyn, NY 11201
(212) 705 –8730
www.KakalecLaw.com
Patricia@KakalecLaw.com


MICHIGAN MIGRANT LEGAL ASSISTANCE
PROJECT INC.
By: Teresa Hendricks
1104 Fuller Ave. NE
Grand Rapids, MI 49503-1371
T: (616) 454-5055
thenricks@migrantlegalaid.com

Curtis C. Warner
5 E. Market St. Ste. 250
Coring, NY 14830
T: (888) 551-8685
cwarner@warner.legal

Attorneys for Plaintiffs